UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI LEE NICHOLS,<br><br>    Plaintiff,<br><br>v.<br><br>360 INSURANCE GROUP LLC, et al.,<br><br>    Defendants. | Case No. 22-cv-03899-RS<br><br>**ORDER GRANTING MOTION TO DISMISS** |
| 360 INSURANCE GROUP, LLC<br><br>    Cross-Claim Plaintiff,<br><br>v.<br><br>POLICYSCOUT, LLC and MOES 1 to 10,<br><br>    Cross-Claim Defendant. | |

**I. INTRODUCTION**

Defendant and Cross-Defendant PolicyScout, LLC moves to dismiss both Plaintiff's Amended Complaint and 360 Insurance Group LLC's Cross-Complaint. For the reasons articulated below, the motion to dismiss is granted for lack of personal jurisdiction, with leave to amend.

## II. BACKGROUND[1]

Plaintiff Terri Lee Nichols ("Nichols"), a resident of San Jose, California, alleges that she received a pre-recorded telemarketing call, which was left as a voicemail. Upon returning the call on May 12, 2022[2], Nichols spoke to a representative from Defendant and Cross-Claim Plaintiff 360 Insurance Group LLC ("360 Insurance"), a Missouri limited liability company. The representative identified herself as promoting Medicare products as part of her employment with 360 Insurance. Because Nichols did not consent to this or any communication from 360 Insurance, she seeks to sue 360 Insurance on behalf of herself and a class of similarly situated individuals for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

After the instant suit was filed, 360 Insurance filed a third party complaint against Defendant and Cross-Claim Defendant PolicyScout LLC ("PolicyScout"), a Delaware limited liability company headquartered in Utah. 360 Insurance had entered into an Insurance Lead Purchase Agreement ("Agreement") to purchase lead data from PolicyScout, and as a result, alleged that it was actually PolicyScout that made the calls to Plaintiff. Accordingly, 360 Insurance sought indemnification from PolicyScout pursuant to the Agreement, and Nichols added PolicyScout as a party to its complaint.

## III. LEGAL STANDARDS

PolicyScout brings the instant motion to dismiss, alleging a lack of standing, lack of personal jurisdiction and a failure to state a claim. PolicyScout also argues dismissal is warranted pursuant to the forum selection clause in the Agreement, which provides that suits concerning the Agreement shall be brought in the state of Utah.[3]

---

[1] The factual background is based on the well-pled allegations in the complaints, which we take as true for the purposes of this motion.

[2] The Amended Complaint actually says "including a call on May 12, 2022," Dkt. 31 at 4, suggesting that there were multiple calls, but no other details are provided and no other instances are alleged. Based on the Third Party Complaint filed by 360 Insurance, however, we assume four calls were made: on April 26, May 2, May 6, and May 12, 2022.

[3] It is a little unclear under which rules PolicyScout moves. In its Notice of Motion, PolicyScout asserts its motion to dismiss is made under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(2), whereas in its actual motion to dismiss, PolicyScout asserts the motion is made under Federal Rules of Civil

On a motion to dismiss for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1), the plaintiff must prove jurisdiction in order to survive the motion. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the district court is not restricted to the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1998).

Motions to dismiss for lack of personal jurisdiction are authorized by Rule 12(b)(2) of the Federal Rules of Civil Procedure. Personal jurisdiction over a nonresident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946) (internal quotation marks and citations omitted). Fairness requires that a court exercise jurisdiction only if the defendant's actions in connection with the forum are such that "he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California's long-arm statute permits the "exercise of jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. P. Code § 410.10.

If personal jurisdiction is challenged, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). However, the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion to dismiss. *See id.*; *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557

---

Procedure 12(b)(1) and 12(b)(6). PolicyScout reiterates in its Reply that its Motion is made under 12(b)(1) and 12(b)(6), but also includes a footnote appending 12(b)(3) as a basis "to the extent applicable." Dkt 39 at 1 n.1. We construe its pleadings as asserting all four bases, albeit with the expectation that PolicyScout will be clearer and more consistent in future submissions.

F.2d 1280, 1285 (9th Cir. 1977). Such a showing requires only that a plaintiff present facts which, if true, establish jurisdiction. *See Unocal*, 248 F.3d at 922. "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true," and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

A motion to dismiss based on a forum-selection clause is governed by Federal Rule of Civil Procedure 12(b)(3), which allows a case to be dismissed for improper venue. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). When considering a forum-selection clause under a Rule 12(b)(3) motion, the Court need not accept pleadings as true and may consider facts outside the pleadings, but the Court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137–38 (9th Cir. 2003). A district court shall dismiss or transfer a case "laying venue in the wrong division or district." *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F.Supp.2d 855, 857 (N.D. Cal. 2010) (citing 28 U.S.C. § 1406(a)).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a statement of claim for relief. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See*

*Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

## IV. DISCUSSION

### A. Personal Jurisdiction

As a Delaware limited liability company with Utah as its principal place of business, PolicyScout avers that it has no connection to California: it has not been registered to do business in the state; it does not have, and has never had, property or offices in California; it has never paid taxes in California; it has never employed people in California, nor does it actively recruit employees in California; and it has never targeted or directed advertising or marketing campaigns at California or its residents. Instead, the company maintains websites accessible nationally, through which consumers may request further communication regarding insurance services and offerings. PolicyScout argues, and Nichols and 360 Insurance do not contest, that the Court lacks general jurisdiction over PolicyScout. The only question remaining, therefore, is whether specific personal jurisdiction is similarly lacking.

The Ninth Circuit analyzes specific personal jurisdiction under a three-prong test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. Because TCPA claims sound in tort, the first prong is more appropriately evaluated using a purposeful direction analysis, *id.*, which in turn is evaluated by a three-part "effects" test, traceable to *Calder v. Jones*, 465 U.S. 783 (1984):

the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

### i. First *Calder* Effect: Intentional Act

PolicyScout contests that it engaged in an express act aimed at the forum state that it knew would likely cause harm in California. PolicyScout first argues that the alleged controversy does not involve any action from PolicyScout itself, because it neither placed the call nor left the voicemail. As corroboration, PolicyScout points to its practice of engaging in outbound communications only if the consumer has first initiated contact—in fact, it claims that it "does not have the ability to randomly generate numbers or automatically dial sequential numbers," but instead "relies exclusively on consumers providing their own information." Dkt. 36 at 4. On this basis, PolicyScout includes a Declaration of Jeff Richard, explaining that Plaintiff agreed to provide prior express written consent to being contacted on the website FindDreamJobs.com on November 13, 2021, through a form that required her to click a checkbox next to "I Agree" and then click a Submit button. PolicyScout proffers a report with various data about the website visit, including the IP address that was used. This account drastically contrasts with that provided by Nichols, who alleges both in her complaint and in a declaration attached to her opposition that she never provided consent to be contacted. She claims she never visited the website FindDreamJobs.com, and was never associated with the IP address that PolicyScout identified in its report as belonging to Plaintiff.

PolicyScout objects to the Declaration of Terri Lee Nichols, claiming that it is materially incomplete, self-serving, and lacks detailed facts and supporting evidence, and urges disregarding it in its entirety.[4] The cases on which PolicyScout relies for this argument, however, are distinguishable. *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015)

---

[4] PolicyScout also objects, on similar grounds, to one paragraph in the Declaration of Bradley Aden.

and *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054 (9th Cir. 2002), for instance, both considered the Parties' evidence in the context of summary judgment, where they had had the opportunity and time to develop the record. It is in that context that "the district court can disregard a self-serving declaration that states only conclusions and not facts," *Nigro*, 784 F.3d at 497. (Notably, the *Nigro* court found that the declaration and deposition, "albeit uncorroborated and self-serving, were sufficient"—and that the district court had actually erred in disregarding them and in granting summary judgment. *Id.*) Here, discovery has yet to be undertaken, and the fundamental question before the court is not about whether there is sufficient evidence to show that one side must prevail as a matter of law with respect to one or more issues, but whether the Plaintiff's claims are plausible in light of the factual allegations in the Complaint. Neither of the declarations are so self-serving or devoid of factual corroboration so as to warrant discrediting them at this early stage. For the purposes of this 12(b)(2) motion to dismiss, therefore, the conflicting factual accounts regarding what Plaintiff Nichols did or did not do are resolved in favor of Nichols.[5]

PolicyScout also tries to contest an intentional act by arguing that the voicemail Nichols received identifies only Insuralife, not PolicyScout, as the company that called, and claims that Insuralife, a legally separate entity from PolicyScout, left the voicemail "on Insuralife's own behalf." Dkt. 39-2 at 4. This is similarly deficient as a basis to dismiss. First, it again counters the allegations presented in the complaints. Nichols explains that, upon returning the call, she spoke to someone from 360 Insurance—not Insuralife. 360 Insurance, for its part, explains that it has no relationship with Insuralife: "360 Insurance contracted with PolicyScout, <u>not</u> Insuralife," and 360 Insurance "never even knew of Insurealife's [*sic*] existence before reading the allegations in PolicyScout's motion to dismiss." Dkt. 37 at 5. It is from these facts that 360 Insurance seeks the inference that "[t]o the extent that Insurealife contacted Plaintiff on behalf of 360 Insurance, that

---

[5] Should it come to light that the declaration is false, of course, PolicyScout will have at its disposal the full breadth of sanctions available for perjury, including under Federal Rules of Civil Procedure 11.

only would have been possible had PolicyScout directed Insurealife to do so." *Id.*

Against the backdrop of the factual contentions contained in the complaints, as well as various pieces of evidence—that PolicyScout is listed alongside Insuralife in the disclosure for FindDreamJobs.com for prior express written consent, Dkt. 26-3 at 3-4 ("Within the Marketing Partners hyperlink found in the PEWC disclosure, a hyperlink witnessed by the Plaintiff, the Defendant's name, PolicyScout. [*sic*] as well as Insuralife is found."), and PolicyScout also entered into the contract with Fluent LLC, the entity that obtained Plaintiff's contact information from FindDreamJobs.com—there is sufficient entanglement and corroboration that PolicyScout's version of events cannot be wholly credited.[6] Although 360 Insurance's Third Party Complaint could certainly have alleged more to solidify the inference that PolicyScout was involved, it does just enough at this early stage for such an inference not to be sheer speculation warranting dismissal, withstanding PolicyScout's claims of "it wasn't me."[7]

### ii. Second and Third *Calder* Effects: Express Aiming At & Knowledge of Likely Causing Harm In California

Even if it did make the call, PolicyScout maintains that that action would still fail to support specific personal jurisdiction in California, because such a call: (1) would have been made with Nichols' consent, and therefore not in violation of the TCPA; and (2) could not have been conduct knowingly aimed at California, given that Nichols' number began with a non-California area code (757). While the first of these arguments fails for the same reasons described above—crediting the non-moving party's version of events, as no inference can arise for the purposes of this motion that Nichols provided consent[8]—the second proves dispositive.

---

[6] 360 Insurance also makes arguments that seem to attack the claim that PolicyScout and Insuralife are distinct entities, but these arguments need not be resolved at this juncture.

[7] PolicyScout also uses these arguments as bases to argue that Nichols and 360 Insurance both lack standing, presumably under 12(b)(1), because neither have suffered an injury in fact traceable to PolicyScout. For the same reasons explained in this subsection, its argument is not persuasive at this early stage.

[8] 360 Insurance is also correct in pointing out that consent is not itself relevant to the personal jurisdiction analysis—the question centers on whether there was purposeful direction by PolicyScout, and not whether such direction was undertaken with consent.

ORDER GRANTING MOTION TO DISMISS
CASE NO. 22-cv-03899-RS
8

Supreme Court caselaw indicates that "minimum contacts analysis looks to the defendant's contacts with the forum *State* itself," *Walden v. Fiore*, 571 U.S. 277, 285 (2014); "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290. Therefore, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the *forum* in a meaningful way." *Id.* (emphasis added).

In the context of TCPA actions, courts have consistently found the *Calder* test's second and third prongs satisfied where defendants contact numbers contain area codes associated with that state. *See Schlesinger v. Collins*, 2019 WL 4674396, at *2 (N.D. Cal. Sept. 25, 2019) (citing cases). Conversely, many district courts refuse to find those same prongs satisfied where the calls or texts were made to an area code outside of that state. *See, e.g.*, *Komaiko v. Baker Techs., Inc.*, 2020 WL 1915884, at *7 (N.D. Cal. Apr. 20, 2020) ("Plaintiffs have not met their burden to show that Baker expressly aimed conduct at California through the text messages sent to non-California numbers from non-California dispensaries."); *Abedi v. New Age Med. Clinic PA*, 2018 WL 3155618, at *5 (E.D. Cal. June 25, 2018) (noting that it was "of critical importance" that "the cell phone number provided . . . was for a non–California number" and distinguishing cases finding personal jurisdiction on the "key fact" that each of those "involved receiving 'calls' on a number that corresponded to a location within the forum").

Plaintiff's phone number bears an area code of 757, which corresponds to the state of Virginia, not California. This fact alone renders it difficult for Nichols and 360 Insurance to meet their burden, and they do not provide arguments to persuade otherwise. Their argument that the phone call was "of course, expressly aimed at a California resident" does not establish the requisite relationship between PolicyScout and the forum state. Their argument that "it should have been obvious that the Plaintiff would receive the call while in California," on account of one of the declarations submitted by PolicyScout (indicating Hayward, CA as the location of the IP address) more directly addresses the question, but still falls short of the requisite burden. The location is provided by an IP address of a mobile phone, which is subject to change, and therefore not necessarily indicative of geographic location—and is an IP address with which, more

importantly, Plaintiff Nichols herself swears she has no association.[9] Nichols' and 360 Insurance's remaining arguments are equally unpersuasive.[10]

Ultimately, Nichols and 360 Insurance invoke no caselaw to support a finding of jurisdiction based on metadata where the area code is not of the jurisdiction they claim, and this Court declines to so find. *Cf. Komaiko*, 2020 WL 1915884, at *7 ("Even assuming that [defendant] knew its non-California dispensaries would likely send at least some messages to California residents, and that not every California resident has a California number, mere knowledge of the statistical probability that its activities will have some impact in California is too attenuated to support the exercise of personal jurisdiction in this state."). On this basis, therefore, the motion to dismiss is granted.[11] Though a cure may be difficult, Nichols and 360 Insurance are given leave to amend.

### B. Improper Forum and Other Arguments

Because personal jurisdiction furnishes a basis on which to dismiss, the opinion need not reach PolicyScout's other arguments. Of note, however, is the fact that PolicyScout also raises a venue concern, on the basis that its Agreement with 360 Insurance contains a forum selection clause directing that suits relating to the Agreement shall be brought in the state of Utah. While the opinion does not analyze this issue in light of the jurisdictional determination, Nichols and 360 Insurance should be prepared to address the concerns identified by PolicyScout as to venue.

---

[9] As certain factual conflicts have been resolved in favor of the non-moving parties, it would be inappropriate to credit PolicyScout's proffered version of events and materials submitted in support thereof in this context.

[10] The bulk of 360 Insurance's response regarding the 757 area code, confined to a footnote, argues that PolicyScout contradicts itself by arguing that phone numbers in its database are encrypted, such that the area codes are not readily visible, and that willful ignorance should not be an excuse. Yet neither of these arguments is availing, as neither actually fulfills the burden of demonstrating that the intentional act was "targeted at a plaintiff whom the defendant *knows* to be a resident" of California. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (emphasis added). Establishing that knowledge is a requisite for establishing personal jurisdiction—and regardless of whether PolicyScout could or could not actually view the phone numbers, the 757 area code precludes an inference of knowing targeting of California.

[11] PolicyScout also attacks the other two elements of personal jurisdiction—conduct arising out of forum related activities and fair play and substantial justice—but these issues need not be addressed, in light of the above.

As this order grants leave to amend, PolicyScout's argument that it is entitled to fees, pursuant to its Agreement with 360 Insurance, is currently premature. Nichols and 360 Insurance have 30 days to file an amended complaint, and PolicyScout may renew its motion for fees upon expiry of that deadline, should no such amended complaint arrive.

**IT IS SO ORDERED**.

Dated: January 11, 2023

_____
RICHARD SEEBORG
Chief United States District Judge